PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2586
_____

UNITED STATES OF AMERICA

v.

DWIGHT TURLINGTON,
Appellant

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 1-02-cr-00673-005)
District Judge: Honorable Jerome B. Simandle
_____

Submitted Under Third Circuit LAR 34.1(a)
September 19, 2012

Before:  SLOVITER, RENDELL and
HARDIMAN, Circuit Judges

(Opinion Filed September 21, 2012)
_____

John A. Klamo, Esq.
Suite 115
811 Church Road
Tarragon Building
Cherry Hill, NJ  08002
  *Counsel for Appellant*

Mark E. Coyne, Esq.
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ  07102
  *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Defendant Dwight Turlington appeals the District Court's judgment of sentence imposed for his having violated the terms of his supervised release. Turlington contends that the District Court erred in sentencing him to a term of five years' imprisonment. He also challenges the substantive reasonableness of the sentence. For the following reasons, we will affirm.

A.

In 2002, Turlington pled guilty to conspiring to distribute more than fifty grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. In 2004, the District Court sentenced Turlington to eighty-four months' imprisonment and sixty months' supervised release.

2

His sentence was less than one-third of that recommended by the Sentencing Guidelines.

On October 29, 2008, Turlington began his term of supervised release. On September 6, 2009, Turlington was charged with driving under the influence in New Jersey. Then, on December 7, 2009, New Jersey state police observed Turlington engaging in three hand-to-hand drug transactions. When the police approached Turlington and announced themselves, he attempted to flee. During flight, Turlington threw a loaded handgun to the ground. The state police eventually placed Turlington under arrest. They searched Turlington and found $245 in cash and a plastic bag of cocaine. Turlington pleaded guilty to a state charge of possessing a weapon while committing a controlled dangerous substance crime. The New Jersey Superior Court sentenced Turlington to three years' imprisonment for that offense, to run concurrently with any other federal sentence.

As a condition of his supervised release, Turlington was prohibited from committing another federal, state or local crime. He was also prohibited from possessing a firearm or destructive device. On May 26, 2011, the District Court held a revocation of supervised release hearing. At the hearing, Turlington admitted to possessing the handgun and drugs. The District Court revoked Turlington's term of supervised release and sentenced him to a sixty-month prison term. Turlington filed a timely appeal.[1]

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). *United States v. Young*, 634 F.3d 233, 237 (3d Cir. 2011).

B.

Pursuant to 18 U.S.C. § 3583(e)(3), a district court may revoke a term of supervised release and "require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release" provided that

> a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, [or] more than 3 years in prison if such offense is a class B felony . . . .

In other words, a district court may impose up to a five-year term of imprisonment after revoking supervised release where the underlying offense is a class A felony. Where the underlying offense is a class B felony, a district court may only sentence the defendant to a maximum of three years' imprisonment.

The crime for which Turlington was convicted was considered a class A felony at the time he was originally sentenced. However, the Fair Sentencing Act of 2010 (FSA) reduced penalties for crack cocaine offenses so that, at the time of his revocation hearing, the underlying offense was classified as a class B felony. As such, he contends that the District Court should have sentenced him to no more than three years' imprisonment. Turlington did not make this argument to the District Court; therefore, we review his

4

challenge to the sentence for plain error. *United States v. Lewis*, 660 F.3d 189, 192 (3d Cir. 2011).[2]

We hold that the District Court was correct to sentence Turlington based on the original classification of the underlying offense as a class A felony. In *Johnson v. United States*, 529 U.S. 694, 700 (2000), the Supreme Court made clear that imposition of a new sentence for violating the terms of one's supervised release is part and parcel of the first offense for which the defendant was convicted. The Court reasoned that "postrevocation penalties relate to the original offense," and instructed lower courts to "attribute postrevocation penalties to the original conviction." *Id.* at 701.

The Supreme Court's decision in *McNeill v. United States*, 131 S. Ct. 2218 (2011) supports our holding. In that case, the Court ruled that, when determining whether an offense is a "serious drug offense" under the Armed Career Criminal Act (ACCA), ACCA "requires a federal sentencing court to consult the maximum sentence applicable to a defendant's previous drug offense *at the time of his conviction for that offense*. . . . The only way to answer this backward-looking question is to consult the law that applied at the time of that conviction." *Id.* at 2221-22 (emphasis added). The Court continued that whether an offense is a

---

[2] Plain error review requires us to first determine whether the District Court committed an error that is plain. Second, we ask whether that error affected the defendant's substantial rights. Third, we must decide whether to exercise our discretion to correct that error, provided that the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *Lewis*, 660 F.3d at 192 n.2.

serious drug offense "can only be answered by reference to the law under which the defendant was convicted." *Id*. at 2222.

The same reasoning applies here. The length of a new term of imprisonment for violating supervised release—a penalty which is attributed to the original conviction according to *Johnson*—"can only be answered by reference to the law under which the defendant was convicted." *McNeill*, 131 S. Ct. at 2222. Section 3583(e)(3) is, like ACCA, backward-looking; it focuses on the previous, underlying conviction. The statute provides that a district court may resentence a defendant "to serve in prison all or part of the term of supervised release authorized by statute *for the offense that resulted in such term of supervised release*." 18 U.S.C. § 3583(e)(3) (emphasis added). Thus, a district court must look to the underlying offense as it existed at the time of his original sentencing when making decisions authorized by § 3583(e)(3).

The Supreme Court's recent decision on the FSA's retroactivity does not change the result. *Dorsey v. United States*, 132 S. Ct. 2321 (2012) addresses only the applicability of the FSA to those defendants who were convicted of crack cocaine offenses prior to the FSA's effective date of August 3, 2010, but were sentenced after that date. It does not address, or disturb, the basic principle that the FSA does not apply to those defendants who were both convicted and sentenced prior to the effective date of the FSA. *See United States v. Reevey*, 631 F.3d 110, 115 (3d Cir. 2010) (holding that the FSA is not retroactive to individuals convicted and sentenced prior to the FSA's effective date). Thus, Turlington is incorrect to analogize his situation to that confronted in *Dorsey*. He is not like those defendants who

6

are convicted of the crack offense prior to the FSA effective date, but sentenced after the effective date. He was both convicted and sentenced prior to the FSA's effective date. The fact that his supervised release was revoked after passage of the FSA is of no moment.

In sum, because, according to *Johnson*, the revocation of supervised release and imposition of the term of imprisonment relates back to the underlying conviction, and because *McNeill* persuades us that, like ACCA, § 3583(e)(3) is a backward-looking statute, we reject Turlington's argument that the District Court should have sentenced him as if his underlying offense were a class B felony. Therefore, the District Court did not plainly err in sentencing Turlington to five years' imprisonment, a term which was clearly authorized by § 3583(e)(3).

Turlington also challenges the substantive reasonableness of his sentence, which we review for abuse of discretion. *United States v. Young*, 634 F.3d 233, 237 (3d Cir. 2011). Section 3583(e) requires district courts to consider the § 3553(a) factors when sentencing defendants upon the revocation of supervised release. Turlington contends that the District Court did not meaningfully consider certain mitigating factors such as his guilty plea, his cooperation with state and federal authorities, the fact that he received only a three-year sentence for his state convictions, and his efforts at rehabilitation. After reviewing the record, we find that the District Court did, however, meaningfully consider these factors when arriving at the five-year term of imprisonment.

C.

Accordingly, we will affirm the judgment of the District Court.