ROGERS, Circuit Judge,
dissenting.
We should not interpret the Fair Sentencing Act to create an anomaly unless the words of the statute compel it. They do not.
The Supreme Court in Dorsey held that the presumption created by the saving statute — that statutory decreases in sentences do not apply to pre-amendment conduct — was overcome, and did so by evaluating six interpretive factors. Dorsey v. United States, — U.S.-, 132 S.Ct. 2321, 2331-35, 183 L.Ed.2d 250 (2012). The particular conclusion that the Court came to was that the sentencing court should apply the statutory mínimums in effect at the time of sentencing, not those in effect at the time of the criminal conduct. Id. at 2335-36. Stated more generally, Congress wanted the new mínimums to apply whenever, after the statutory effective date, the sentence had to be calculated by the trial court. In that sense, Dorsey supports the idea that, when a post-Fair Sentencing Act sentence is properly calculated under § 3582(c)(2) because a guideline has been retroactively changed, the new statutory mínimums should be applied as well. In other words, when a post-Fair Sentencing Act sentencing court properly has before it the calculation of a sentence, the court should use the Fair Sentencing Act mínimums.
The result of the majority’s analysis is, in contrast, entirely anomalous. This is not the simple anomaly created by giving Fair Sentencing Act relief to criminals whose guideline range is far above the applicable statutory minimum, but not giving any relief to the less culpable criminals whose guideline range is affected by the minimum (although that discrepancy is unfortunate enough). The anomaly instead is that Congress directed the Sentencing Commission to promulgate sentencing guidelines incorporating the 18-1 ratio, and authorized the Commission to make the guidelines changes retroactive, such that the changed ratio would apply retroactively to all sentenced criminals when their sentence resulted from a guideline, but somehow did not want the 18-1 ratio to apply retroactively if incorporated in a statutory minimum, even though the sentencing mínimums were changed for post-enactment sentencing.
The issue thus is not whether the Fair Sentencing Act applies the 18-1 ratio retroactively so as to open the prison doors. The Fair Sentencing Act clearly provides for this when the 18-1 ratio is implemented through a guideline rather than through a statutory minimum. The question in this case is whether the Fair Sentencing Act contemplates retroactivity when it provides for the 18-1 ratio through a guideline, but does not contemplate ret-roactivity when it provides for the 18-1 ratio through a revised statutory minimum. There is no coherent rationale for this distinction. It is an anomaly.
Each of the interpretative foundations for the Dorsey Court’s analysis applies by analogy to the application of the 18-1 statutory mínimums under § 3582(c)(2). First, “the 1871 saving statute permits Congress to apply a new Act’s more lenient penalties to pre-Act offenders without expressly saying so in the new Act.” Dorsey, 132 S.Ct. at 2331 (italics in original). As the Supreme Court instructs in Dorsey, in order to apply the Fair Sentencing Act to a new set of pre-Act offenders, we are to “assure ourselves that ordinary interpretive considerations point *686 clearly in that direction.” Id. at 2332. They did in Dorsey, and they do here.
Indeed, in light of Dorsey, it is not logical to rely on the saving statute’s default rule in this case. The default rule of that statute applies under neither the majority’s analysis nor ours. Under the majority’s analysis, the 18-1 statutory mínimums apply to defendants sentenced after the effective date, but not to § 3582 proceedings initiated after the effective date. Under our dissenting analysis, the 18-1 statutory mínimums apply to sentencing after the effective date and to § 3582 proceedings properly brought after the effective date. Under neither analysis does the applicability of the 18-1 statutory mínimums depend on when the offense was committed — the default rule created by the saving statute. In other words, there are three possible relevant times for applying the 18-1 statutory mínimums: (A) the time of the offense, (B) the time of sentencing, or (C) the time of sentencing or the time of a properly brought § 3582 motion. It makes no sense to say that because (A) is the default under the saving statute, (B) rather than (C) is the law. This questionably-based assumption, however, is the cornerstone of the other arguments for the anomalous interpretation of the applicability of the Fair Sentencing Act. Without it, such arguments essentially collapse.
Second, Congress created a background principle of retroactivity by enacting § 3582(c)(2). For the Dorsey Court, the fact that the Sentencing Reform Act instructed judges to consider the guidelines that were “in effect on the date the defendant is sentenced” weighed in favor of applying the 18-1 ratio to all defendants that were sentenced post-enactment. Dorsey, 132 S.Ct. at 2332-33; 18 U.S.C. § 3553(a)(4)(h). Congress also enacted the Fair Sentencing Act against the backdrop of § 3582 — a statute that permits retroactive modification of sentences after the Sentencing Commission amends guideline ranges downward. Congress’ grant of the power to make guideline amendments retroactive to the Commission in 28 U.S.C. § 994(u) shaped the enactment of the Fair Sentencing Act because Congress knew that the Fair Sentencing Act’s enactment would lead to modification proceedings under § 3582(c)(2). Congress can hardly have intended to give retroactive reductions of sentences with one hand, but to take that relief away with the other when it simultaneously amended the very statutory mínimums that the majority says limit the Blewetts’ access to relief under § 3582(c)(2).
Third, the text of the Fair Sentencing Act granted emergency authority to the Sentencing Commission to “make such conforming amendments to the ... guidelines ... to achieve consistency with other guideline provisions and applicable law.” Fair Sentencing Act of 2010, Pub.L. 111— 220, § 8(2), 124 Stat. 2372, 2374. As the Dorsey Court explained, “achieving consistency with ‘other guideline provisions’ means reducing the base offense levels for all crack amounts proportionally (using the new 18-to-l ratio).” Dorsey, 132 S.Ct. at 2333. In Dorsey, it would have been illogical for Congress to tell the Commission to make the guidelines more lenient, but to defeat the effect of that change by keeping the 100-1 mínimums in effect just because Dorsey's conduct occurred pre-enactment. The same logic would apply just as strongly, if not more strongly, to offenders who committed their offense prior to the new amendments’ effective date, but whose sentence was thereafter subject to the § 3582 process for retroactive reduction of a sentence. The Commission could not, consistent with its power to make the guidelines retroactive through § 3582, allow proportional reductions in sentences based on the new 18-1 ratio if the 100-1 *687 mínimums continue to apply. (Of course if the Fair Sentencing Act had explicitly provided for nonretroactivity for the amended statutory mínimums, as in the majority’s “second roadblock” example, this factor would certainly weigh differently.)
Fourth, for the Dorsey Court, reading the Fair Sentencing Act as “imposing upon the pre-Act offender a pre-Act sentence after Congress had specifically found in the Fair Sentencing Act that such a sentence was unfairly long” created disparities of the kind the Fair Sentencing Act was enacted to prevent. Dorsey, 132 S.Ct. at 2333. Similar disparities result from not giving retroactive relief to an offender who committed the crime and was convicted and sentenced promptly, and one for whom delay in arrest, conviction, or sentencing pushed the sentencing beyond the effective date of the Fair Sentencing Act.
Fifth, not permitting the § 3582 procedure to apply “makes matters worse,” in the words of the Dorsey Court’s fifth consideration, by giving retroactive relief only to those whose actions put them in guideline ranges higher than the mandatory mínimums — i.e., the worse criminals. The purpose of the Act — “restoring] fairness to Federal cocaine sentencing” — is hardly served by granting relief only to the more culpable criminals. The crazy-quilt nature of the majority’s interpretation is first shown by a variation of the example used by the Dorsey Court to illustrate unwarranted disparities. In the Court’s hypothetical, Smith and Jones were both convicted of possessing crack with intent to distribute. Smith was caught with four grams and Jones with five. Changing the hypothetical to apply to the facts of this case, assume that both Smith and Jones were sentenced before the enactment of the Fair Sentencing Act. Smith’s base offense level would be 22 and, assuming a criminal history of I, Smith would receive a range of 41-51 months. Since Jones had five grams, his base offense level would be 24 with a sentencing range of 51-63 months. But since Jones’ offense involved five grams, he would also be subject to the pre-Fair Sentencing Act mandatory minimum of five years. 21 U.S.C. § 841(b)(l)(B)(iii). Now imagine that both Smith and Jones move for a sentence modification after the Fair Sentencing Act’s enactment. Under the 18-1 drug quantity table, both Smith and Jones would have base offense levels of 16 and therefore sentencing ranges of 21-27 months. But under the majority’s view, only Smith would be entitled to a modification, i.e., Smith’s sentence could be modified to as few as 21 months, but Jones’ sentence would remain at 60 months. A situation where one defendant’s sentence is more than twice as long as a similarly situated individual’s is precisely the kind of “disparate sentencing cliff” that concerned the Dorsey Court and that the sentencing guidelines are supposed to avoid. Congress unquestionably recognized this by directing the Commission to enact Guidelines that avoid “unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.” 28 U.S.C. § 991(b)(1)(B).
The majority’s interpretation “makes matters worse” if the Dorsey Court’s hypothetical is further modified to assume that a third individual, Johnson, is sentenced the same day as Smith and Jones. Johnson’s situation is identical, except that his crime involved five kilograms of crack. Under the 100-1 guidelines, Johnson would receive a base offense level of 38 and with a criminal history of I, a sentencing range of 235-293, well above the applicable 10-year mandatory minimum. Johnson’s amended 18-1 range would be 188-235, making him eligible for a modification under § 3582. The availability of retroac *688 tive application of the Guidelines for Johnson, but not for Jones is another example of a sentencing disparity like the ones that concerned the Dorsey Court because it would provide retroactive fairness only for the more culpable offenders.
Sixth, in holding that the 18-1 míni-mums did apply to pre-enactment conduct, the Dorsey Court recognized that “the application of the new mínimums to pre-Act offenders sentenced after August 3 will create a new set of disparities. But those disparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences (unless Congress intends re-opening sentencing proceedings concluded prior to a law’s effective date).” Dorsey, 132 S.Ct. at 2335. This statement provides the strongest support for the majority’s result, but it is only dictum in the context of a case that in no respect involved a § 3582 sentence modification. That the Court held the saving statute to be trumped notwithstanding the possibility of remaining sentencing disparities — without ruling on whether such disparities remained — does not compel the conclusion that the disparities remain. The Supreme Court did not have that case before it. Thus, the interpretive factors used by the Dorsey Court indicate that the 18-1 míni-mums should apply retroactively in a § 3582 proceeding.
It may be that the Supreme Court Justices and litigants in Dorsey assumed that the 18-1 mínimums could not be applied whenever sentencing occurred prior to the Fair Sentencing Act’s passage. But assumptions are not law. Likewise the holdings of other circuits,[1] and of our prior three-judge panels, are not binding, however persuasive they may or may not be. The plain fact is that the language of the Fair Sentencing Act does not require the anomaly that the 18-1 ratio applies retroactively to reduce guideline-driven sentences but not mandatory minimum-driven sentences, when both the guidelines and the mínimums were reduced by the Fair Sentencing Act.
Section 3582(c)(2) permits a modification when a defendant “has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission ... if such reduction is consistent with applicable policy statements issued by the Sentencing Commission.” It is true that the statute, which was of course passed before the Fair Sentencing Act, does not refer to reduced statutory mínimums. But it does refer to guidelines reduced by the Commission, and the Blewetts have reduced sentencing ranges because of the Commission’s changes to the § 2D1.1 drug quantity table. It is also true that the words can be parsed not to apply to mandatory minimum-driven sentences, on the theory that a reduction of the sentence was not “based on” a reduced guideline. But the language can just as well be read to say that, for purposes of the later-enacted Fair Sen *689 tencing Act, § 3582 applies where a guideline, even one restricted by a statutory minimum, is reduced. In that sense, the sentences in the Blewetts’ cases were based on since-reduced guidelines. In short, the words “based on” need not have the identical meaning in every context, and should not be restrictively construed to prevent what otherwise is a result fairly compelled by applying a Dorsey analysis to the question of how § 3582 applies to the Fair Sentencing Act.[2]
The requirement that the sentence reduction be consistent with the policy statement found at U.S.S.G. § 1B1.10 is also met. To be consistent with the policy statement, the guideline range applicable to the Blewetts must have been lowered by an amendment listed at 1B1.10(c). Subsection (c) includes parts A and C of Amendment 750, which made the current, 18-1 drug quantity table found in § 2D1.1 permanent. That the Blewetts’ sentencing ranges were reduced by this amendment is not controverted. What is contested is the fact that the policy statement provides that: “A reduction in the defendant’s term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if ... an amendment listed in subsection (c) does not have the effect of lowering the defendant’s applicable guideline range.” § lB1.10(a)(2)(B). The guidelines’ commentary explains that one situation where an amendment may not have the effect of lowering an applicable guideline range would be because of the operation of a statutory minimum. Id. cmt. 1(A). This language is only a problem if one assumes that Amendment 750 would have no effect on the Blewetts’ sentences because they would still be subject to a ten-year sentence because of the 100-1 mandatory mín-imums. But that argument is premised on the earlier conclusion that Congress did not intend for the Fair Sentencing Act to make the 18-1 mínimums apply retroactively in § 3582(c)(2) proceedings. If it did, which as shown above is the fair reading of the Fair Sentencing Act, then Amendment 750 reduced the Blewetts’ sentencing ranges and the effect of that reduction is not blocked by operation of a statutory mandatory minimum.
This analysis does not mean that the Sentencing Commission is trumping the statute. The revised statutory mínimums are, after all, created by statute. The Sentencing Commission, acting properly under 28 U.S.C. § 994(u), made the Fair Sentencing Act-driven guidelines retroactive. Doing so provided the statutory key to making the statutory minimum changes applicable under § 3582. This is a reasonable statutory interpretation, and it is particularly reasonable to avoid an incoherent anomaly.
It is no answer to this reading to say that the Constitution would somehow be violated if the retroactive application of a statutory provision depends on agency action. The Sentencing Commission may, when statutorily authorized and guided by an intelligible principle, make substantive decisions affecting sentences without violating what is left of the nondelegation doctrine. That is one of the central holdings of Mistretta v. United States, 488 U.S. 361, 371-79,109 S.Ct. 647,102 L.Ed.2d 714 (1989). There is no particular reason that this cannot be the case with respect to retroactivity determinations where the *690 substance is determined by Congress.[3] Indeed, our court has rejected out of hand such an argument in the context of the Sex Offender Registration Notification Act (SORNA). In United, States v. Felts, 674 F.3d 599, 606-07 (6th Cir.2012), we recognized as legitimate the power of the Attorney General to determine the applicability of the substantive criminal provisions of SORNA to persons who committed, prior to the Act’s effective date, offenses for which they had to register.
It is true that the Sentencing Commission was not required to make the 18-1 guideline change retroactive, regardless of how expected such a move was. And if the Commission had not made the guideline change retroactive, the anomalies emphasized above would not have occurred. It made sense, therefore, for the retroactivity of the 18-1 ratio to be applied in § 3582 only if the Commission made the guidelines changes retroactive. Tying the ret-roactivity of the revised statutory minimums to the retroactivity of the revised guidelines, which a fair reading of the statutory provisions would do, creates a system that is fair and coherent overall. It gives the Commission the responsibility for making the 18-1 ratio retroactive, works fairness, and avoids anomalies that are an embarrassment to the law. Sticking persistently to the 100-1 ratio for the sole purpose of statutory mínimums applied prior to the effective date of the Fair Sentencing Act, while in other respects permitting the 18-1 ratio to be applied retroactively, attributes to Congress the creation of a strange deformed one-winged bird. I would not attribute such an intent to Congress.
I do agree with the majority, however, that the constitutional avoidance principle does not apply in this case. We should not, however, let the weakness of the constitutional argument infect a dispassionate analysis of the meaning of the Fair Sentencing Act. The purpose of the Fair Sentencing Act was to increase fairness in sentencing, and it is entirely incoherent to provide for retroactive fairness in some cases but not in others on a formalistic distinction not compelled by the language of the statute.

. The views of our sister circuits may not be as consistently contrary as the majority suggests. The cases cited from the First, Second, Third, and Fourth Circuits are either pre-Dorsey or do not involve § 3582. See United States v. Santos-Rivera, 726 F.3d 17, 28 n. 2 (1st Cir.2013) (direct appeal); United States v. Diaz, 627 F.3d 930, 931 (2d Cir.2010) (pre-Dorsey ); United States v. Turlington, 696 F.3d 425, 426 (3d Cir.2012) (proceeding under § 3583(e)(3)); United States v. Mouzone, 687 F.3d 207, 222 (4th Cir.2012) (direct appeal). Further, the cases cited from the Fifth, Seventh, and Tenth circuits reject an argument that a § 3582 proceeding is a resentencing and so therefore Dorsey applies, an argument that is much weaker than the one advanced by the Blewetts here because it is clearly precluded by Dillon v. United States, 560 U.S. 817, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010). See United States v. Kelly, 716 F.3d 180, 181 (5th Cir.2013); United States v. Foster, 706 F.3d 887, 888 (7th Cir.2013); United States v. Lucero, 713 F.3d 1024, 1028 (10th Cir.2013).

. Justice Sotomayor's concurrence in Freeman v. United States,-U.S.-, 131 S.Ct. 2685, 180 L.Ed.2d 519 (2011) is arguably in some tension with such a reading. Her analysis however is focused specifically on the Rule 11(c)(1)(C) context, and does not necessarily control how § 3582 should be applied to issues involving mandatory minimum sentences in the context of the Fair Sentencing Act.

. The Mistretta opinion does not hold that the Constitutionality of the Sentencing Commission depends on the premise that Congress did not "vest in the [Commission] the legislative responsibility for establishing minimum and maximum penalties,” but rather indicated, in discussing what degree of political authority was inappropriate, that the Guidelines do not "vest in the Judicial Branch the legislative responsibility for establishing minimum and maximum penalties for every crime." 488 U.S. at 396, 109 S.Ct. 647 (emphasis added.) Section 3582 does not establish a minimum or maximum penalty in this sense for any crime. It instead provides a way in which the court may apply mínimums revised by statute to crimes sentenced prior to the effective date of the change. Mistretta, decided when Guidelines sentencing was mandatory, upheld seemingly much more substantive power by the Commission.