[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 19-14381

————————————————

D.C. Docket No. 8:05-cr-00188-SDM-AEP-1

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

versus

ANTONIO SOUL GONZALEZ,

                                        Defendant - Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

(August 19, 2021)

Before JORDAN, NEWSOM, and TJOFLAT, Circuit Judges.

JORDAN, Circuit Judge:

Antonio Gonzalez appeals the denial of his motion for a sentence reduction pursuant to § 404(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5222. His case presents a question of first impression for us—whether a sentence imposed upon the revocation of supervised release qualifies for a reduction under § 404(b) of the First Step Act when the underlying crime is a covered offense under the Act. We now join the Fourth and Sixth Circuits in holding that it does. We also conclude, however, that the district court in this case did not abuse its discretion in denying Mr. Gonzalez's motion for a sentence reduction.

## I

Pursuant to a plea agreement, Mr. Gonzalez pled guilty in 2005 to possessing 50 grams or more of cocaine base (i.e., crack cocaine) with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii). The district court sentenced him to 240 months in prison and 120 months of supervised release.

In 2014, the district court reduced Mr. Gonzalez's term of imprisonment to 151 months pursuant to the government's substantial assistance motion. In 2015, the district court reduced Mr. Gonzalez's term of imprisonment to 76 months under 18 U.S.C. § 3582(c)(2).

Mr. Gonzalez began his term of supervised release in 2015. When he tested positive for cocaine and marijuana, provided false information to probation, and failed to obtain employment, his probation officer filed a petition for revocation of

supervised release, and the district court issued a warrant for his arrest.  The probation officer later filed a superseding petition adding new alleged criminal conduct: (1) possession of 500 grams or more of cocaine with intent to distribute; (2) possession of 28 grams or more of cocaine base; and (3) possession of a firearm in furtherance of a drug trafficking crime.  Mr. Gonzalez admitted to nine violations, and the district court revoked his supervised release and sentenced him to 57 months in prison, to be served consecutively to a separate sentence imposed for the new criminal conduct.

In April of 2019, Mr. Gonzalez, proceeding *pro se*, sought to modify his 57-month sentence under § 404(b) of the First Step Act.  He argued that his original narcotics conviction was now classified as a Class B felony instead of a Class A felony, and as a result his maximum prison term for a violation of supervised release was three years rather than five.  The government opposed a reduction under the First Step Act.  It argued that Mr. Gonzalez's current sentence was for revocation of supervised release under 18 U.S.C. § 3583(e)(3), and not for a covered offense under the First Step Act.  It also alternatively asserted that, even if Mr. Gonzalez were eligible, the district court should not reduce his sentence because his new criminal conduct and his prison disciplinary record (which included 18 violations, some involving drugs) demonstrated "a continued disrespect for authority" and "raise[d] legitimate concerns about recidivism."

The district court denied Mr. Gonzalez's motion on alternative grounds. First, the district court concluded that Mr. Gonzalez was ineligible under the First Step Act because his current sentence was for a violation of supervised release, and not for a covered offense. Second, even if Mr. Gonzalez were eligible, the district court expressly adopted the government's alternative arguments. It explained that it would not reduce his sentence due to his "unwillingness or inability to abide by the law" and his "continued lawless behavior," including the recent drug and firearm offenses. Mr. Gonzalez's appeal followed.

## II

Mr. Gonzalez argues that his current sentence, imposed upon revocation of supervised release, makes him eligible for a reduction under § 404(b) of the First Step Act. He asserts that the revocation of supervised release relates back to the initial offense for which he was imprisoned, and thus that initial offense should be the focus of the eligibility determination under the First Step Act. Because the Fair Sentencing Act of 2010, Pub. L. No. 111-20, §§ 2-3, 124 Stat. 2372, reclassified his initial narcotics offense from a Class A to a Class B felony, he contends that his supervised release revocation allows him to obtain a reduction under the First Step Act.

We exercise plenary review in determining whether a district court has authority to reduce a sentence under the First Step Act. *See United States v. Russell*,

994 F.3d 1230, 1236 (11th Cir. 2021); *United States v. Jones*, 962 F.3d 1290, 1296 (11th Cir. 2020).  On appeal, the government has changed its position on the matter of eligibility.  It now concedes that Mr. Gonzalez's revocation sentence is eligible for a reduction under the First Step Act because the underlying offense was a covered offense under § 404(b).  We are "not bound to accept" a party's concession on a "question of law," but based upon our independent analysis we think the government's U-turn on eligibility is "well advised." *Orloff v. Willoughby*, 345 U.S. 83, 87 (1953).

For a defendant to be eligible for a sentence reduction under the First Step Act, "the district court must have imposed a sentence . . . for a covered offense." *Jones*, 962 F.3d at 1298 (internal quotation marks omitted).  The First Step Act defines a covered offense as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . that was committed before August 3, 2010."  First Step Act, § 404(a). *See generally Terry v. United States*, 141 S. Ct. 1858, 1862–63 (2021) (explaining eligibility under the First Step Act).  There is no dispute that Mr. Gonzalez's underlying narcotics crime, which involved the possession of crack cocaine, is a covered offense under the Act.  The remaining question, then, is whether a sentence imposed upon the revocation of supervised release qualifies for a sentence reduction under § 404(b) of the Act when the underlying crime is a covered offense.

5

The Supreme Court has explained that "post[-]revocation penalties relate to the original offense." *Johnson v. United States*, 529 U.S. 694, 701 (2000). *See also United States v. Haymond*, 139 S. Ct. 2369, 2379–80 (2019) (plurality opinion) ("an accused's final sentence includes any supervised release sentence he may receive"). We have similarly stated that as a "general principle . . . post-revocation penalties are contemplated in relation to the original offense." *United States v. Williams*, 790 F.3d 1240, 1251 (11th Cir. 2015).[1]

Because a "period of supervised release is simply a part of the sentence for the underlying conviction," *id.*, we join the Fourth and Sixth Circuits in holding that a sentence imposed upon revocation of supervised release is eligible for a sentence reduction under § 404(b) of the First Step Act when the underlying crime is a covered offense within the meaning of the Act. *See United States v. Woods*, 949 F.3d 934, 937 (6th Cir. 2020) ("Given that Woods' current 37-month sentence relates to his original offense under 21 U.S.C. § 841(a)(1)—a First Step Act 'covered offense'—Woods is eligible for resentencing[.]"); *United States v. Venable*, 943 F.3d 187, 194 (4th Cir. 2019) ("[G]iven that Venable's revocation sentence is part of the penalty for his initial offense, he is still serving his sentence for a 'covered offense' for

---

[1] Our sister circuits are in agreement. *See, e.g.*, *United States v. Salazar*, 987 F.3d 1248, 1256–57 (10th Cir. 2021); *United States v. Reyes-Santiago*, 804 F.3d 453, 477 (1st Cir. 2015); *United States v. Turlington*, 696 F.3d 425, 427 (3d Cir. 2012); *United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2010).

purposes of the First Step Act. Thus, the district court had the authority to consider his motion for a sentence reduction just as if he were serving the original custodial sentence."). So Mr. Gonzalez is eligible for a sentence reduction under the First Step Act.

## III

Eligibility, of course, is not the end of the matter. As its statutory text indicates, and as we have explained, § 404(b) of the First Step Act authorizes district courts to reduce the sentences of defendants with covered offenses but does not require them to do so. *See United States v. Taylor*, 982 F.3d 1295, 1298 (11th Cir. 2020); *Jones*, 962 F.3d at 1304. That means we review for abuse of discretion a district court's decision as to whether to reduce a sentence for an eligible defendant. *See Jones*, 962 F.3d at 1296. And that standard generally provides a district court with a "range of choice" as long as the choice does not constitute a "clear error of judgment." *United States v. Irey*, 612 F.3d 1160, 1188–89 (11th Cir. 2010) (en banc). *See also Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes a mistake of law.").

## A

A district court must adequately explain its decision under the First Step Act, and that usually requires providing a reasoned basis for the exercise of discretion. *See United States v. Stevens*, 997 F.3d 1307, 1317 (11th Cir. 2021). In exercising

7

its discretion, a district court may consider the sentencing factors set forth in 18 U.S.C. §3553(a), but it is not required to do so. *See id.* at 1316; *United States v. Potts*, 997 F.3d 1142, 1145–46 (11th Cir. 2021). And as long as it is not ambiguous, a district court's alternative exercise of discretion in denying a First Step Act motion can suffice for affirmance. *See Potts*, 997 F.3d at 1147. As explained below, we conclude that the district court here did not abuse its discretion in denying Mr. Gonzalez's First Step Act motion.

The district court stated that Mr. Gonzalez was ineligible for a reduction under the First Step Act, but alternatively assumed his eligibility and denied a sentence reduction in the exercise of its discretion. The district court based its denial on Mr. Gonzalez's "unwillingness or inability to abide by the law" and his "continued lawless behavior"—as demonstrated by his prison disciplinary record and most recent drug and firearm offenses—and a concern about recidivism.

Although the district court did not refer to the § 3553(a) factors by name, its reasons touched on two of them—the need to "afford adequate deterrence" and the need to "protect the public from further crimes of the defendant." *See* § 3553(a)(2)(B)–(C). Where, as here, a defendant has engaged in criminal conduct while on supervised release, recidivism and deterrence are appropriate considerations in deciding whether to reduce a sentence under the First Step Act. The district court's reasons were clear, supported by the record, and did not

8

constitute an abuse of discretion. *See Woods*, 949 F.3d at 938 (affirming denial of a First Step Act motion for reduction of a revocation sentence because the defendant's crimes while on supervised release, pattern of drug involvement, and possession of weapons indicated that the original sentence was not sufficient to promote respect for the law, protect the public, or afford adequate deterrence). *Cf. Potts*, 997 F.3d at 1146–47 (affirming district court's alternative denial of First Step Act motion, after consideration of the § 3553(a) factors, given the defendant's extensive criminal history and the seriousness of the offenses).

**B**

In a supplemental filing, Mr. Gonzalez urges us to follow the Seventh Circuit's decision in *United States v. Corner*, 967 F.3d 662, 666 (7th Cir. 2020), and hold that district courts must always calculate and consider a defendant's new range under the Sentencing Guidelines before exercising their discretion under § 404(b) of the First Step Act. The Seventh Circuit relied on language in § 404(c) of the Act stating that a defendant cannot file a second motion for reduction if the first motion was "denied after a complete review of the motion on the merits." *Id.* at 665. In its view, the failure to properly calculate the new range results in an uninformed exercise of discretion and "amounts to a reversible procedural error." *Id.*

In some instances, it may be that the better practice is for a district court to calculate the new sentencing range before deciding whether to grant or deny a First

9

Step Act motion. In other instances, perhaps not. *Cf. Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009) (discouraging "[s]ubstantial expenditure[s] of scarce judicial resources on difficult questions that have no effect on the outcome of the case"). In any event, we decline to follow *Corner* by fashioning a hard-and-fast rule of automatic reversal.

First, the Seventh Circuit's analysis of the text of the First Step Act is incorrect and takes the "complete review" language—which it called a "requirement"—out of context. The "complete review" mentioned in § 404(c) of the Act only relates to a court's ability to consider *successive* First Step Act motions: "No court shall entertain a motion made under this section to reduce a sentence if . . . a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits." As we have suggested, this "complete review" language is relevant only with respect to successive motions. *See United States v. Denson*, 963 F.3d 1080, 1087 (11th Cir. 2020). Indeed, the language appears nowhere else in the Act.[2]

---

[2] To the extent the Fourth and Sixth Circuits have issued decisions based on the same reading of § 404(c), we respectfully disagree with them as well. *See United States v. Collington*, 995 F.3d 347, 359 (4th Cir. 2021) (asserting that "[§] 404(c) of the First Step Act requires district courts to undertake 'a complete review of the motion on the merits'") (quoting First Step Act, § 404(c)); *United States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020) ("Though coming from the provision that governs repeat resentencing motions, this language shows the dimensions of the resentencing inquiry Congress intended district courts to conduct: complete review of the resentencing motion on the merits.").

Second, Rule 52(a) of the Federal Rules of Criminal Procedure instructs that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded," and the Supreme Court has held that "a federal court may not invoke supervisory power to circumvent the harmless-error inquiry prescribed by . . . Rule 52(a)." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1987). We have held, therefore, that a "Sentencing Guidelines miscalculation is harmless if the district court would have imposed the same sentence without the error." *United States v. Barner*, 572 F.3d 1239, 1248 (11th Cir. 2009) (also explaining that "where the district [court] chooses to sentence within the range prescribed by the Sentencing Guidelines, an error in their calculation cannot be harmless"). An automatic reversal rule would be in tension, if not in conflict, with Rule 52(a) and our precedent. We are confident that we can decide, on a case-by-case basis, whether a district court's failure to properly calculate the new range constitutes reversible procedural error under the First Step Act.

## IV

We affirm the district court's denial of Mr. Gonzalez's motion under § 404(b) of the First Step Act.

**AFFIRMED.**

11

TJOFLAT, Circuit Judge, concurring:

To determine whether a district court has abused its discretion pursuant to a given statute, we must first identify "the bounds of that discretion and the principles that guide its exercise." *United States v. Taylor*, 487 U.S. 326, 336, 108 S. Ct. 2413, 2419 (1988). In other words, we must discern the governing standard. And if we can't do that, we must be willing to say the district court's exercise of discretion is unreviewable. We've been unable to articulate any standard that limits a district court's discretion to reduce sentences under § 404(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5222, and yet we've held we can review these decisions for abuse of discretion. I write separately to explain why our precedents are incorrect. But because I'm bound by these incorrect precedents, I concur in the judgment.

A district court ruling on a defendant's motion for a reduced sentence under § 404(b) must answer three basic questions. First, was the defendant sentenced for a "covered offense"? Second, do sections 2 and 3 of the Fair Sentencing Act permit a sentence lower than defendant's original sentence? And third, should the defendant be given a reduced sentence?[1] The first two questions deal with whether

---

[1] A district court may not "entertain a motion" by a defendant who has already had his sentence imposed or reduced "in accordance with" sections 2 or 3 of the Fair Sentencing Act. § 404(c). Nor may it "entertain a motion" if a previous § 404(b) motion on behalf of the same defendant was denied "after a complete review of the motion on the merits." *Id.* Therefore the district court must also resolve these questions as part of the eligibility inquiry.

12

the defendant *can* be given a reduced sentence—in other words, whether the defendant is "eligible." They are questions of law subject to de novo review. *United States v. Jones*, 962 F.3d 1290, 1296 (11th Cir. 2020). The third question arises only if the first two are answered affirmatively, and it invites an exercise of discretion by the district court.

But the discretionary call under § 404(b) is unusual. Typically, we're able to ask whether a district court making such a call "abused" its discretion in reference to a particular standard that limits both the range of permissible conclusions and the grounds on which those conclusions may be based. *See Taylor*, 487 U.S. at 335, 108 S. Ct. at 2419 ("[D]iscretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles." (quotation marks and citation omitted)). "Discretion," then, is usually thought of as "power of free decision or choice *within certain legal bounds*." Webster's Third New International Dictionary 647 (1993) (emphasis added). An "abuse" occurs when those bounds are exceeded. *See Taylor*, 487 U.S. at 336, 108 S. Ct. at 2419. Or, as we often articulate it, a district court abuses its discretion when it applies an incorrect legal standard or makes a clear error of judgment. *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (citation omitted).

But neither § 404 nor 18 U.S.C. § 3582(c)(1)(B)—the provision allowing for reductions where "expressly permitted by statute"—provide any such limits.

13

Section 404 provides only that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed," but that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." § 404(b)–(c). And § 3582(c)(1)(B) simply permits a court to modify a term of imprisonment "to the extent [] expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure."

In this way, First Step Act reductions are different from other sentence modifications under § 3582(c). A district court modifying a sentence under § 3582(c)(1)(A) is required to apply the § 3553(a) factors "to the extent that they are applicable" and to find that "extraordinary and compelling reasons warrant such a reduction." It must also determine that a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A). Section § 3582(c)(2) permits reduction "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)." But again, the court must first consider the § 3553(a) factors and determine that reduction would be consistent with the Commission's policy statements. *Id.* In short, a district court's discretion to reduce under these

14

subsections is cabined by specific legal principles and factual determinations which provide footholds for the reviewing court to say whether an abuse has occurred.

These textual differences ought to give us pause. It's tempting to smooth over this irregular terrain by borrowing the common denominator of sentencing-modification decisions—consideration of the § 3553(a) factors—and importing it to the First Step Act scheme. *See, e.g.*, *United States v. Easter*, 975 F.3d 318, 323–24 (3d Cir. 2020) (holding that district courts exercising discretion under § 404(b) "*must* consider all of the § 3553(a) factors to the extent they are applicable," in part because "if the district court were not required to consider these factors, then it is unclear how the district court's exercise of discretion would be reviewable on appeal" (emphasis added)); *United States v. White*, 984 F.3d 76, 92–93 (D.C. Cir. 2020) ("The parties agree that the District Court should give proper consideration to the sentencing factors outlined in 18 U.S.C. § 3553(a) in assessing Appellants' motions for reduced sentences. We agree that the court *must* do this on remand." (emphasis added)). But we must presume that Congress acts meaningfully when it says something in one section of a statute and omits it in another—even when we can't discern any good reason why it might have done so. *Kucana v. Holder*, 558 U.S. 233, 249, 130 S. Ct. 827 (2010) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act,

15

it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation marks and citation omitted) (alterations adopted)).

I think we made the right call, then, in *United States v. Stevens*, 997 F.3d 1307, 1316 (11th Cir. 2021), when we held that district courts considering whether to reduce under § 404(b) aren't required to consider the § 3553(a) factors.  But I differ with the *Stevens* panel in its handling of the problem which followed from that conclusion.  If district courts need not consider § 3553(a), then what if anything constrains their discretion in reducing sentences under § 404(b)?  The principled answer, in my view, is that nothing constrains their discretion.  If nothing constrains their discretion, there can be no abuse.  And if no abuse, then no review—even if we think the district court's decision was wholly arbitrary.[2]

_____

[2] Some courts going the other way have reasoned that Congress surely couldn't have intended for exercises of discretion under § 404(b) to be unreviewable. *See, e.g.*, *United States v. Rose*, 379 F. Supp. 3d 223, 235 (S.D.N.Y. 2019), *aff'd*, 841 F. App'x 328 (2d Cir. 2021) ("It is unlikely that Congress intended to give district courts unbounded or unreviewable discretion to grant or deny relief, and if § 3553(a) did not apply, then courts would have to develop new and untried standards to limit judicial discretion."). But speculation about Congress's intent has no place in the business of statutory interpretation. *See Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 397, 71 S. Ct. 745, 751 (1951) (Jackson, J., concurring) ("We do not inquire what the legislature meant; we ask only what the statute means." (quoting Oliver Wendell Holmes, *The Theory of Legal Interpretation*, *in* Collected Legal Papers 203, 207 (1920))); Charles Fried, *Sonnet LXV and the "Black Ink" of the Framers' Intention*, 100 Har. L. Rev. 751, 759 (1987) ("[W]ords and text are chosen to embody intentions and thus replace inquiries into subjective mental states.  In short, the text *is* the intention of the authors or of the framers.").

Instead of holding that § 404(b) decisions are unreviewable—a holding which was, to be fair, foreclosed by our earlier decisions in *Jones*, 962 F.3d at 1296, and *United States v. Russell*, 994 F.3d 1230, 1236 (11th Cir. 2021)—we went on to borrow certain constraints from other contexts without asking whether it made sense to do so. In particular, we said that a district court exercising its discretion under § 404(b) must "set forth enough to satisfy the appellate court that it has considered the parties' arguments and has a reasoned basis for exercising its own legal decisionmaking authority." *Stevens*, 997 F.3d at 1317 (quoting *Rita v. United States*, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468 (2007)) (alterations adopted)). This explanation requirement was an import from *Gall v. United States*, 552 U.S. 38, 50, 128 S. Ct. 586, 597 (2007), and *United States v. Johnson*, 877 F.3d 993, 997 (11th Cir. 2017). But the explanation requirement applied in *Gall* was plain on the face of the statute at issue there—§ 3553, which requires a district court when *imposing* a sentence to "state in open court the reasons for its imposition of the particular sentence." § 3553(c); *see also Rita*, 551 U.S. at 356, 127 S. Ct. at 2468. And *Johnson* held that a district court ruling on a § 3583(e)(1) motion for early termination of supervised release "must demonstrate that the pertinent factors were taken into account." 877 F.3d at 995. Those "pertinent factors" came from § 3553(a), the consideration of which is expressly required by § 3583(e). *Id.* at 997.

17

The First Step Act scheme, of course, differs from the provisions at issue in *Gall* and *Johnson* in that it neither features an express explanation requirement nor mandates consideration of § 3553(a).  So there's a double-layer of irony to *Stevens*' conclusion that district courts must explain their decisions under § 404(b).  First, such a requirement is as textually unmoored as the § 3553(a) requirement the panel rejected.  And second, that imported requirement, in its natural habitat, served only as a means for reviewing courts to tell whether the district court considered the there-mandatory, here non-mandatory § 3553(a) factors.

Explanation requirements are warranted, the Supreme Court has said, "[w]here . . . Congress has declared that a decision will be governed by consideration of particular factors."  *Taylor*, 487 U.S. at 336, 108 S. Ct. at 2419.  Only if the district court "clearly articulate[s]" the effect of those factors on its decision "can an appellate court ascertain whether [the] district court has ignored or slighted a factor that Congress has deemed pertinent to the choice of remedy, thereby failing to act within the limits prescribed by Congress."  *Id.* at 336–37, 108 S. Ct. at 2419.

Given that the purpose of an explanation requirement is to allow a reviewing court to determine whether the district court considered the factors it was required to consider, it's puzzling in the extreme that the *Stevens* panel didn't identify what factors district courts must consider when exercising their discretion under §

18

404(b). Yet the point of requiring an explanation clearly wasn't lost on the panel. Such a requirement, we said, is meant to "provide this Court with enough explanation in order to determine whether [] an abuse has occurred"—to determine, in other words, "whether [the] district court applied an incorrect legal standard or made a clear error in judgment." *Stevens*, 997 F.3d at 1317–18.

By requiring an explanation without identifying the factors a district court must consider in exercising its discretion under § 404(b), *Stevens* produced a strange rule: District courts must provide an explanation merely for explanation's sake. The requirement is essentially content-neutral. It matters not *what* the explanation reveals about the district court's reasoning, only that the district court gave *some explanation*.

This is evident from the fact that we've never actually found that a district court abused its discretion under § 404(b). Whenever we've applied the explanation requirement to vacate a § 404(b) decision, it's been because the district court gave essentially no explanation, and not because its explanation revealed an abuse of discretion. Consider *Russell*, where the District Court denied the defendant's § 404(b) motion with the following statement:

> Even assuming Defendant is eligible for resentencing under the First Step Act of 2018, after considering the statutory factors set forth in 18 U.S.C. § 3553(a), the Court would exercise its discretion to deny Defendant a reduction in this sentence.

19

*Russell*, 994 F.3d at 1240.  We vacated and remanded not because this explanation revealed that the District Court applied the incorrect legal standard, but because "we [couldn't] discern from the record the basis for the district court's decision." *Id.  Stevens* was the same.  The terse order there—"even if the First Step Act applied, the Court would still impose a sentence of five (5) years of supervised release"—was insufficient because it "provide[d] no indication of what, if anything, the district court considered in its determination."  *Stevens*, 997 F.3d at 1312, 1317 (alterations adopted).

Consider also the cases where we've affirmed § 404(b) decisions.  In *United States v. Potts*, 997 F.3d 1142, 1146 (11th Cir. 2021), we held that the District Court's explanation for why it didn't reduce the defendant's sentence under § 404(b) was sufficiently detailed to allow for meaningful review.  In a typical case, we would then articulate the considerations the explanation must reflect.  Instead, we repeated the cryptic requirement that the explanation "must adequately explain [the] [] decision," and must "set forth enough to demonstrate [that the District Court] . . . has a reasoned basis for exercising its own legal decisionmaking authority."  *Id.* at 1145 (citation and quotation marks omitted) (alterations adopted and added).  Then after summarizing the contents of the government's response in opposition to the motion and the probation officer's memorandum—which the

20

District Court stated it considered—we concluded simply that the "district court's

decision . . . was not an abuse of discretion." *Id.* at 1146.

As a brief aside, it's unclear why the explanation in *Potts* was sufficient to

allow for meaningful review while the explanation in *Russell* wasn't.  Both

explanations gave a perfunctory nod to the § 3553(a) factors before concluding that

a sentence reduction was unwarranted.  The only difference, as we noted in *Potts*,

was that the District Court's order in *Potts* "expressly referenced the probation

officer's memorandum" and the government's response.[3]  *Id.* at 1146.  But it's not

at all apparent how meaningful review could hinge on a mere statement from the

district court that it "consider[ed] [] the government and probation's responses."

*Id.* at 1144 (quotation marks omitted).

The majority opinion in the instant case also illustrates that what we're

really looking for is an explanation rather than an abuse of discretion in the typical

sense.  The opinion recites the refrain that a district court must "adequately explain

its decision" and "provid[e] a reasoned basis for the exercise of discretion."  Maj.

Op. at 7.  Then, in concluding there was no abuse of discretion, the majority states

simply that the District Court's explanation was "clear" and "supported by the

---

[3] For the sake of completeness, I note that *Potts* distinguished *Russell* on three grounds. *Potts*, 997 F.3d at 1146–47.  But only one—the reference to the probation memorandum and the government's response—is relevant to the issue of whether the decision not to reduce was an abuse of discretion.

record." *Id.* at 8. This explanation-for-its-own-sake requirement makes little sense.

But perhaps *Stevens'* explanation requirement is somewhat content-sensitive after all. Maybe it's meant to function as a sort of general reasonability check. The idea might be that we can gradually identify certain things that district courts *may not* consider even if we can't affirmatively identify anything they *must* consider. This approach has some appeal. It forces district courts to be transparent and allows us to intervene if they make patently unreasonable decisions.[4] And best of all, it saves us from the necessarily unprincipled task of extracting an ex-ante governing standard from statutory silence.

There's only one problem, of course: We lack the authority to develop federal common law respecting the reasonability of sentence-modification decisions. "[A]ppellate review of sentencing discretion . . . [is] limited to instances prescribed by statute." *United States v. Booker*, 543 U.S. 220, 307, 125 S. Ct. 738, 791 (2005) (Scalia, J., dissenting). And "except to the extent specifically directed by statute, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence."

---

[4] I note that if a district court were to exercise its discretion under § 404(b) in an unconstitutional manner—by declining to reduce a sentence because of a defendant's race, for instance—that decision would be reviewable even though the First Step Act scheme doesn't itself supply a standard. *See Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1294 n.7 (11th Cir. 2008) (noting that "an appellate court may have jurisdiction over constitutional claims" arising from an otherwise unreviewable exercise of discretion by the Board of Immigration Appeals).

*Williams v. United States*, 503 U.S. 193, 205, 112 S. Ct. 1112, 1121 (1992) (quotation marks and citation omitted); *see also Bourdon v. U.S. Dep't of Homeland Sec.*, 940 F.3d 537, 546 (11th Cir. 2019) ("[W]e 'possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.'" (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994))).

It may be supposed that the authority to review § 404(b) decisions for general reasonableness flows from the Supreme Court's decision in *Booker*, 543 U.S. at 245, 125 S. Ct. at 756–57, which struck down the provision of the Sentencing Reform Act that made the Sentencing Guidelines mandatory,[5] along with the provision providing for a de novo standard of review,[6] and declared that the new judge-made standard of review was for "unreasonableness."  But as the Supreme Court recognized in *Dillon v. United States*, 560 U.S. 817, 130 S. Ct. 2683 (2010), *Booker* doesn't apply to proceedings under § 3582(c).  "Sentence-modification proceedings," the Court said, are "readily distinguishable from other sentencing proceedings" and therefore "do not implicate the interests identified in *Booker*."  *Dillon*, 560 U.S. at 828–30, 130 S. Ct. at 2692–93; *see also United States v. Dunn*, 728 F.3d 1151, 1162 (9th. Cir. 2013) (O'Scannlain, J., concurring)

---

[5] 18 U.S.C. § 3553(b)(1).

[6] § 3742(e).

(asserting that Ninth Circuit precedent holding that § 3582(c)(2) decisions are reviewable for reasonableness is "in deep tension" with *Dillon*); *United States v. Bowers*, 615 F.3d 715, 717 (6th Cir. 2010) (no jurisdiction to review for reasonableness a district court's decision whether to reduce a sentence under § 3582(c)(2) in light of *Dillon*).

And even if *Booker* did apply to § 3582(c) decisions, *Booker*'s reasonableness review doesn't entail a free-wheeling authority to decide a district court has acted unreasonably without reference to any particular statutory factors. Rather, as the Court made clear in *Booker* and subsequently in *Gall*, such review is conducted in the light of the § 3553(a) factors. *Booker*, 543 U.S. at 261, 125 S. Ct. at 766 ("Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."); *see Gall*, 552 U.S. at 56 128 S. Ct. at 600 ("Since the District Court committed no procedural error, the only question for the Court of Appeals was whether the sentence was reasonable—*i.e.,* whether the District Judge abused his discretion in determining that the § 3553(a) factors supported a sentence of probation and justified a substantial deviation from the Guidelines range."). The scope of *Booker*'s reasonableness review, then, is significantly less than the unanchored review permitted under *Stevens*. *See Koon v. United States*, 518 U.S. 81, 97, 116 S. Ct.

24

2035, 2046 (1996) ("Congress did not intend, by establishing limited appellate review [under the Sentencing Reform Act], to vest in appellate courts wide-ranging authority over district court sentencing decisions.").

It's a well-established principle of administrative law that "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S. Ct. 1649, 1655 (1985). But this isn't just a separation-of-powers doctrine, and neither is it limited to review under the Administrative Procedure Act. Rather, it's based on the practical truth that "meaningful judicial review is impossible" where a statute grants discretion while "provid[ing] absolutely no guidance as to how that discretion is to be exercised." *Make The Rd. N.Y. v. Wolf*, 962 F.3d 612, 632 (D.C. Cir. 2020) (citation and quotation marks omitted); *Robbins v. Reagan*, 780 F.2d 37, 45 (D.C. Cir. 1985) (per curiam).

Consider *Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1292 (11th Cir. 2008), where we addressed whether we had jurisdiction to review the Board of Immigration Appeals' ("BIA") denial of petitioners' motion to reopen their case. The regulation at issue provided that "[t]he Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision" and that "[t]he decision to grant or deny a motion to reopen or reconsider is within the

discretion of the Board . . . even if the party moving has made out a prima facie case for relief." *Lenis*, 525 F.3d at 1293 n.6 (citing 8 C.F.R. § 1003.2(a)). Because the regulation contained "[n]o language . . . requir[ing] the BIA to reopen a deportation proceeding under any set of particular circumstances," but rather gave the BIA discretion to do so "as it sees fit," we concluded we lacked jurisdiction. *Id.* at 1294.

How doesn't the First Step Act scheme give a district court the discretion to reduce a sentence simply "as it sees fit?" Our precedents readily declare that these decisions are reviewable for abuse of discretion, but they all fail to answer that essential question.

I note one final thing. Although it's true as a general matter that in interpreting statutes we apply a "strong presumption" in favor of judicial review, this principle does not counsel in favor of reviewing § 404(b) decisions for abuse of discretion. *Bourdon*, 940 F.3d at 545 (citing *Cuozzo Speed Tech., LLC v. Lee*, — U.S. —, 136 S. Ct. 2131, 2140 (2016)). For one thing, this presumption typically applies to judicial review of *executive action*. *See Kucana*, 558 U.S. at 251, 130 S. Ct. at 839 (recognizing "a familiar principle of statutory construction: the presumption favoring judicial review of *administrative action*" (emphasis added)); *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434, 115 S. Ct. 2227, 2236 (1995) ("Because the statute is reasonably susceptible to divergent

interpretation, we adopt the reading that accords with traditional understandings and basic principles: that *executive determinations* generally are subject to judicial review . . . ." (emphasis added)); *Abbott Labs v. Gardner*, 387 U.S. 136, 140, 87 S. Ct. 1507, 1511 (1967) ("[A] survey of our cases shows that judicial review of a final *agency action* by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." (emphasis added)).  It's not at all clear the presumption should apply to sentencing decisions, which historically were unreviewable so long as the sentence was within statutory limits.  *Koon*, 518 U.S. at 96, 116 S. Ct. at 2045.

And in any case, my contention isn't that review of § 404(b) decisions is *wholly* unavailable.  Review for legal error is surely available, as when a district court incorrectly decides the § 404 eligibility question.  *See Jones*, 962 F.3d at 1296.  Where, however, Congress has provided no principles to guide the district court's discretion whether to modify a sentence, we should fall back on the traditional rule that "a sentence imposed by a federal district judge, if within statutory limits, is generally not subject to review."  *United States v. Tucker*, 404 U.S. 443, 447, 92 S. Ct. 589, 591 (1972).

If I were writing on a blank slate, I would hold we lack jurisdiction to review a district court's exercise of discretion to reduce—or not reduce—a sentence under

27

§ 404(b).  But since I'm constrained by these incorrect precedents, I concur in the decision to affirm the District Court's exercise of its unbridled discretion.